O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RUSSELL BERNARDINI, | ) | NO. CV 08-8150-JVS (MAN) |
| | ) | |
| Plaintiff, | ) | MEMORANDUM AND ORDER DISMISSING |
| | ) | |
| v. | ) | FIRST AMENDED COMPLAINT WITH LEAVE |
| | ) | |
| BRIAN HAWS, et al., | ) | TO AMEND |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, proceeding *pro se* and *in forma pauperis*, filed a civil rights complaint, pursuant to 42 U.S.C. § 1983, on December 15, 2008. Plaintiff filed a First Amended Complaint on December 16, 2008.

Congress has mandated that courts perform an initial screening of *in forma pauperis* actions.[1]  This Court may dismiss an *in forma pauperis* civil rights action before service of process if it concludes that the complaint is frivolous, fails to state a claim upon which relief can be

---

[1] Although plaintiff's claims arose while he was incarcerated, he was released on parole before he commenced this action.  (First Amended Complaint at 29.)  Thus, the First Amended Complaint is not subject to the screening provisions of 28 U.S.C. § 1915A, which apply to prisoners only.

granted, or seeks relief against a defendant who is immune. 28 U.S.C. §§ 1915(e)(2). In screening such a complaint, the Court must construe the allegations of the complaint liberally and must afford the plaintiff the benefit of any doubt. *See* Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). A *pro se* litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment. *Id.*; Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

**ALLEGATIONS OF THE FIRST AMENDED COMPLAINT**

Plaintiff's claims arose while he was incarcerated at the California State Prison-Los Angeles County at Lancaster ("CSP-LAC"). (First Amended Complaint at 4.) Plaintiff sues the following CSP-LAC officials: Warden Brian Haws; former Warden C.M. Harrison; Correctional Officers T.L. Hayes, Kenneth Thomas, James Gentry, and Ibanez; Sergeant Jameson; John Doe Nos. 1, 2, 3; 7, 8, 9, 10, and 14; Jane Roe Nos. 4, 12, and 13;[2] and Correctional Counselor Jackson. (*Id.* at 5-11.) Plaintiff also names as defendants the following state officials: Matthew Cate, Secretary of the California Department of Corrections and Rehabilitation ("CDCR"); and Jeanne Woodford, former director of the California Department of Corrections ("CDC"), the CDCR's predecessor agency. (*Id.* at 8, 9.)

Plaintiff asserts three claims for relief. Claims One and Two

---

[2] Plaintiff refers to a Jane Roe No. 11 in the body of the First Amended Complaint, but she is not listed as a defendant.

2

1  arise under the Eighth Amendment. (First Amended Complaint at 12, 14.)
2  Claim Three purports to assert a claim under the Racketeer Influenced
3  and Corrupt Organizations Act ("RICO"). (*Id.* at 27, 30-31, 32.) Claim
4  Three also may be liberally construed to assert a retaliation claim.
5  (*Id.* at 25.) Plaintiff seeks damages. (*Id.* at 31.)

*Claim One*:

Plaintiff alleges that, on December 7, 2004, Correctional Officer Hayes twice slammed plaintiff's head against a concrete wall, causing him severe pain. (First Amended Complaint at 12.) Sergeant Jameson and John Doe Nos. 1, 2, and 3 were present, but did not stop the assault until Sergeant Jameson said, "Okay, that's enough." (*Id.* at 12, 17-18.) The assault happened as defendants Jameson and Hayes were escorting plaintiff, who had requested a cell move; Hayes told plaintiff that he was causing problems by requesting the move, slammed his head against the wall, and told him to return to his cell. (*Id.* at 12, 18, 19.) Plaintiff contends that Sergeant Jameson, as Hayes' supervisor, had a duty to stop Hayes from assaulting plaintiff. (*Id.* at 13.) Plaintiff fears that he has sustained a permanent head injury. (*Id.* at 16.-17)

Plaintiff alleges that, after he filed an administrative appeal, Sergeant Jane Roe No. 4 failed to adequately investigate the incident and engaged in a cover-up by intimating in her response to his appeal that there was no evidence the incident actually happened. (First Amended Complaint at 13, 18-19, 19-22.) According to plaintiff, there were witnesses to the incident, and he speculates that it may have been captured on a hidden video camera. (*Id.* at 17, 19-20.) Plaintiff

3

argues that Jane Roe No. 4 either did not interview the witnesses or falsified her response to plaintiff's administrative appeal by misreporting what they said. (*Id.* at 20.) He contends that Secretary Cate, former Director Woodford, Warden Haws, former Warden Harrison, and John Doe Nos. 7 through 10 are responsible for this failure to investigate and alleged cover-up. (*Id.* at 13-14, 21-22.)

*Claim Two:*

Plaintiff alleges that, on December 16, 2004, Correctional Officers Thomas and Gentry pushed him down onto his knees and slammed his head and upper torso against the concrete floor. (First Amended Complaint at 14, 23.) Thomas and Gentry then got down alongside plaintiff and started to punch him on the back of his head. (*Id.* at 24.) Plaintiff suffered pain and bumps and abrasions on his nose, face, and knee. (*Id.* at 23-24.) Lieutenant Jane Roe No. 11 interviewed plaintiff about the incident and his injuries were videotaped. (*Id.*)

*Claim Three*:

Plaintiff alleges that some of the defendants retaliated against him for pursuing an administrative appeal against his substance abuse instructor. (First Amended Complaint at 25.) Plaintiff had complained that a story told by the substance abuse instructor in class about shutting up her niece's dog in the girl's room, with predictable results, demonstrated abusive behavior towards the niece. (*Id.* at 25.) On or about November 3, 2004, shortly before plaintiff's annual classification hearing, the instructor's supervisor, Jane Roe No. 13,

4

met with plaintiff's Correctional Counselors, defendants Jackson and John Doe No. 14, "possibly to tell" them to remove plaintiff from the substance abuse program. (*Id.* at 25-26.)

On February 3, 2005, defendants Thomas and Ibanez escorted plaintiff to the infirmary. (First Amended Complaint at 26.) They took him to a room, closed the door, turned off the lights, and Thomas pulled out his baton.[3] (*Id.* at 15, 26.) They threatened to kill plaintiff unless he ceased prosecuting his previous action in this Court and also ceased pursuing his administrative appeal based on the December 16, 2004 incident. (*Id.* at 27.) However, Thomas never actually hit plaintiff with the baton. (*Id.* at 26-27.)

On February 5, 2005, defendant Thomas came to plaintiff's cell and offered him a pair of used tennis shoes if plaintiff would drop his administrative appeal. (First Amended Complaint at 15, 27.) Plaintiff contends that these efforts to persuade him to cease pursuing his lawsuit and grievances violated RICO. (*Id.* at 27.)

**DISCUSSION**

I. **PLAINTIFF MUST NAME ALL DEFENDANTS IN THE CAPTION OF THE COMPLAINT.**

The caption of the First Amended Complaint lists only one

---

[3] Plaintiff variously describes this incident as occurring on February 3, 2005, and February 12, 2005. (First Amended Complaint at 15, 26.) Plaintiff should clarify the correct date in his Second Amended Complaint.

5

defendant, Brian Haws. (First Amended Complaint at 1). Rule 10(a) of the Federal Rules of Civil Procedure requires that the name of each defendant be included in the caption of the complaint. Fed. R. Civ. P. 10(a); *see also* Ferdik v. Bonzelet, 963 F.2d 1258, 1262-63 (9th Cir. 1992); Local Rule 11-3.8. If plaintiff files a Second Amended Complaint, he must list in the caption the names of all defendants against whom he is asserting a claim, including the fictitious (Doe or Roe) defendants whose names he does not yet know.

**II.  PLAINTIFF'S EIGHTH AMENDMENT CLAIMS AGAINST DEFENDANTS HAYES, JAMESON, THOMAS, AND GENTRY WITHSTAND SCREENING.**

At this early stage of the action, the Court concludes that the following claims in the First Amended Complaint withstand screening: (1) plaintiff's Eighth Amendment excessive force claim against defendant Hayes based on the December 7, 2004 incident; (2) plaintiff's Eighth Amendment failure to protect claim against defendant Jameson based on the December 7, 2004 incident; and (3) plaintiff's Eighth Amendment excessive force claims against defendants Thomas and Gentry based on the December 12, 2004 incident. However, plaintiff must re-allege these claims, and the supporting factual allegations, in the Second Amended Complaint, if he still wishes to pursue them.

**III. PLAINTIFF FAILS TO STATE A CLAIM AGAINST DEFENDANTS CATE, WOODFORD, HAWS, AND HARRISON.**

Section 1983 provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected,

6

any . . . person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. As defined by the courts, a person "subjects" another to the deprivation of a constitutional right, within the meaning of Section 1983, if he or she does an affirmative act, participates in another's affirmative act, or omits to perform an act which he or she is legally required to do that causes the complained-of deprivation. Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

A supervisory official is liable only if he or she was personally involved in the constitutional deprivation, or if there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir. 2001); Redman v. County of San Diego, 942 F.2d 1435, 1446-47 (9th Cir. 1991); see Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)("A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."); Cunningham v. Gates, 229 F.3d 1271, 1292 (9th Cir. 2000) (supervisors can be held liable for own culpable action or inaction in the training, supervision, or control of subordinates, or their acquiescence in a constitutional deprivation, or for other conduct showing reckless or callous indifference to the rights of others).

Plaintiff has named as defendants the following supervisory officials: Matthew Cate, the current CDCR Secretary; Jeanne Woodford, former CDC director; Brian Haws, current CSP-LAC warden; and C.M. Harrison, former CSP-LAC warden. (First Amended Complaint at 8, 9.)

7

Plaintiff does not contend that these defendants personally participated in the incidents giving rise to his claims.  Rather, he considers them responsible for a purportedly inadequate investigation of the December 8, 2004 incident by Jane Roe No. 4, who is alleged to have implied falsely in her response to plaintiff's grievance that there was no evidence the incident actually happened.  (First Amended Complaint at 8, 9, 21-22.)  Even assuming, *arguendo*, that these factual allegations could constitute a basis for a Section 1983 claim as against Jane Roe No. 4, plaintiff has not alleged any factual basis for imposing liability on the supervisory defendants.[4]  *See* Jeffers, 267 F.3d at 915; Redman 942 F.2d at 1446-47; Taylor, 880 F.2d at 1045.

Furthermore, plaintiff's allegations regarding the purportedly inadequate investigation of the incident, and the alleged misstatements in the response to his grievance, are insufficient to support a Section 1983 claim against any defendant.[5]  It is well settled that a prisoner cannot state a due process claim based on the processing of his grievances.  *See* Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003)("inmates lack a separate constitutional entitlement to a specific

---

[4]  In addition, the Court takes judicial notice that Matthew Cate was appointed as CDCR Secretary on May 16, 2008.  *See* www.cdcr.ca.gov/About_CDCR/cate.html.  Thus, he did not hold that position at the time of the assaults on plaintiff or during the ensuing investigation.  Accordingly, there is *no* factual basis for holding him liable on any basis arising out of Jane Roe No. 4's alleged conduct.

[5]  The Court will not screen the sufficiency of plaintiff's claims as against the fictitious defendants, such as Jane Roe No. 4, until after plaintiff has identified these defendants by name.  Such deferral of screening at this time should not be construed as a finding about the cognizability of the claims alleged against the fictitious defendants.

8

1  prison grievance procedure"); Mann v. Adams, 855 F.2d 639, 640 (9th Cir.
2  1988)("[t]here is no legitimate claim of entitlement to a grievance
3  procedure").  To the extent plaintiff contends that prison officials
4  engaged in a cover-up of the December 7, 2004 incident, such allegations
5  can state a Section 1983 claim only if the cover-up deprived plaintiff
6  of his right of access to courts by causing him to fail to obtain
7  redress for the constitutional violation that was the subject of the
8  cover-up.  See Karim-Panahi, 839 F.2d at 625; Rose v. City of Los
9  Angeles, 814 F. Supp. 878, 881 (C.D. Cal. 1993).  A cover-up claim is
10 premature when, as here, plaintiff's action seeking redress for the
11 underlying constitutional violations remains pending. See Karim-Panahi,
12 839 F.2d at 625 (claim alleging police cover-up of misconduct was
13 premature when action challenging misconduct was pending); Rose, 814 F.
14 Supp. at 881 (same).

16     Similarly, even assuming that plaintiff's allegations about Jane
17 Roe No. 4 -- that she "intimated" in her response to his grievance that
18 there was no evidence of the incident -- can be viewed as alleging that
19 she made a false statement, making false statements in a report does not
20 constitute an independent basis for a Section 1983 violation, especially
21 where, as here, plaintiff has not alleged any resulting injury.  See
22 Hunt v. Jones, 1996 WL 193857, *1 (N.D. Cal. 1996)(allegations that
23 police officer prepared a false police report did not state a Section
24 1983 claim).

26     Accordingly, plaintiff's claims against defendants Cate, Woodford,
27 Haws, and Harrison must be dismissed.

1  **IV.    PLAINTIFF FAILS TO STATE A CLAIM UNDER RICO**.

3  Plaintiff purports to assert a claim under RICO.  (First Amended Complaint at 27, 30, 32.)  He contends that defendants Thomas and Ibanez violated RICO when they attempted, through threats and bribes, to dissuade him from pursuing his civil rights action and administrative appeal.  (First Amended Complaint at 27.)

"To state a civil RICO claim, plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' 'business or property.'"  Ove v. Gwinn, 264 F.3d 817, 825 (9th Cir. 2001); see Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S. Ct. 3275, 3285 (1985); 18 U.S.C. §§ 1962(c), 1964(c).  To demonstrate injury for RICO purposes, a plaintiff must show an injury to his business or property; personal injuries are not compensable under RICO.  Ove, 264 F.3d at 825; Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris Inc., 185 F.3d 957, 963 (9th Cir. 1999).  Here, plaintiff's allegations are wholly insufficient to allege a RICO injury or, indeed, *any* of the elements of a RICO claim.

Accordingly, plaintiff's RICO claim must be dismissed.

**V.    PLAINTIFF FAILS TO STATE A RETALIATION CLAIM AGAINST ANY DEFENDANT**.

Liberally construed, Claim Three asserts a retaliation claim as well as a RICO claim.  (*See* First Amended Complaint at 25.)

10

In the prison context, "a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005)(*internal footnote omitted*); *see also* Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995); Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985). Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity. Pinard v. Clatskanie School District, 467 F.3d 755, 770 (9th Cir. 2006); White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000). Plaintiff has the burden of demonstrating that his exercise of his First Amendment rights was the substantial or motivating factor behind defendants' conduct. Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 576 (1977); Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Plaintiff also bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains. Pratt, 65 F.3d at 806.

Here, plaintiff alleges that the purported retaliation was motivated by a grievance he filed about his substance abuse instructor. (Complaint at 26.) However, plaintiff does not clearly describe the allegedly adverse acts, or even who committed them. Plaintiff alleges only that, shortly before his annual classification hearing, Jane Roe No. 13, who was the substance abuse instructor's supervisor, met with

11

his Correctional Counselors, defendants Jackson and John Doe No. 14, "possibly" to tell them to "fire or unassign" plaintiff from his substance abuse assignment. (First Amended Complaint at 26.) Apart from plaintiff's failure to allege that this discussion actually occurred (instead of "possibly" occurred), plaintiff does not allege that he was in fact removed from the substance abuse program, or (if he was) the reasons given for his removal. Moreover, even if plaintiff was removed from the program, he does not does not allege that the decision to remove him was made by these defendants. Thus, plaintiff has not adequately alleged either adverse acts by the defendants, or retaliatory motivation on their part, or absence of legitimate correctional goals. *See* Rhodes, 408 F.3d at 567-68.

Accordingly, plaintiff's retaliation claim must be dismissed. Because this is the only claim plaintiff asserts against defendant Jackson, unless plaintiff can rectify its deficiencies, he should not include Jackson as a defendant in the Second Amended Complaint.

**VI.  PLAINTIFF FAILS TO STATE A CLAIM AGAINST DEFENDANT IBANEZ.**

Plaintiff contends that defendants Thomas and Ibanez threatened to kill him if he did not withdraw his grievance regarding the December 16, 2004 incident. (First Amended Complaint at 15, 26-27.) These allegations are the sole basis for plaintiff's claim against defendant Ibanez.

According to plaintiff, this conduct by defendants Thomas and Ibanez violated RICO. (First Amended Complaint at 27.) As already

discussed, these allegations cannot support a RICO claim under any cognizable legal theory. *See* Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). However, even if the Court liberally construes plaintiff's allegations to assert a constitutional claim, the claim is fatally defective because mere threats are not constitutionally prohibited. *See* Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (allegations that guards threatened prisoner with bodily harm to persuade him to cease pursuing legal redress did not state a cause of action under Section 1983).

Accordingly, plaintiff has not alleged any basis for a Section 1983 claim against defendant Ibanez. Unless plaintiff can rectify these deficiencies, he should not include Ibanez as a defendant in the Second Amended Complaint.

### VII. **PLAINTIFF FAILS TO STATE A CLAIM AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES.**

Plaintiff has sued all defendants in their official as well as individual capacities. (First Amended Complaint at 5-11.)

Official capacity claims against state officials are merely another way of pleading a claim against the state itself. *See* Will v. Michigan Dep't. of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989)("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." (*internal citation omitted*)). The Eleventh Amendment

prohibits federal jurisdiction over claims against a state unless the state has consented to suit or Congress has abrogated the state's immunity. <u>Pennhurst State School & Hosp. v. Halderman</u>, 465 U.S. 89, 99-100, 104 S. Ct. 900, 107-08 (1984). The State of California has not consented to be sued under Section 1983 in federal court, and the Supreme Court has held that Section 1983 was not intended to abrogate a state's Eleventh Amendment immunity. <u>Dittman v. California</u>, 191 F.3d 1020, 1025-26 (9th Cir. 1999); *see* <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 n.17, 105 S. Ct. 3099, 3107 n.17 (1985). Thus, official capacity claims for damages are barred by the Eleventh Amendment. <u>Dittman</u>, 191 F.3d at 1026 ("[t]he Eleventh Amendment bars actions for damages against state officials who are sued in their official capacities in federal court"). In addition, the Supreme Court has held that a state official sued in his official capacity is not "a person" subject to suit under Section 1983 for purposes of a suit for damages. <u>Will</u>, 491 U.S. at 71 & n. 10, 109 S. Ct. at 2312 & n.10.

Accordingly, plaintiff's official capacity claims against defendants must be dismissed.

**CONCLUSION**

For the foregoing reasons, the First Amended Complaint is dismissed with leave to amend. If plaintiff wishes to pursue this action, he is granted thirty (30) days from the date of this Memorandum and Order within which to file a Second Amended Complaint that attempts to cure the defects in the First Amended Complaint described herein. The Second Amended Complaint, if any, shall be complete in itself. It shall not

refer in any manner to the First Amended Complaint or the original Complaint. **Plaintiff may not add new claims or new defendants without obtaining prior leave of court. Fed. R. Civ. P. 15(a).**

**Plaintiff is explicitly cautioned that failure to timely file a Second Amended Complaint, or failure to correct the deficiencies described herein, may result in a recommendation that this action be dismissed pursuant to Fed. R. Civ. P. 41(b).**

DATED: April 2, 2009

                                                                     /s/
                                          MARGARET A. NAGLE
                                  UNITED STATES MAGISTRATE JUDGE